UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD HALLEY, | ) |
|     Plaintiff, | ) No. 13 C 6436 |
| | ) Judge Sara L. Ellis |
| v. | ) |
| AETNA LIFE INSURANCE COMPANY, | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Ronald Halley seeks the restoration of his long-term disability benefits under a policy underwritten and administered by Aetna Life Insurance Company ("Aetna"). Halley initially brought a single count complaint for denial of benefits under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) ("§ 502(a)(1)(B)"). Halley then amended his complaint to include a claim for breach of fiduciary duty and disgorgement pursuant to 29 U.S.C. § 1132(a)(3) ("§ 502(a)(3)") based on the denial of his benefits. Aetna now moves to dismiss Halley's breach of fiduciary duty claim. Because Halley cannot maintain a § 502(a)(3) claim for an injury for which remedies exist under § 502(a)(1)(B), Aetna's motion [62] is granted and Claim II of the First Amended Complaint ("Complaint") [31] is dismissed.

## BACKGROUND[1]

Halley worked full-time as Vice President of Sales at The Duchossois Group Inc. until June 1, 2009. At that point, Halley stopped working for several months "due to the worsening of

---

[1] The facts in the background section are taken from Halley's First Amended Complaint and the exhibits attached thereto and are presumed true for the purpose of resolving Aetna's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

a combination of severe impairments including, but not limited to stenosis and spondylosis of both the cervical and lumbar spine, polyneuropathy with tremor, a labral tear in his left shoulder, deep vein thrombosis, left elbow epicondylitis, peripheral artery disease, spurs in the left and right shoulders, and other non-specific orthopedic and medical conditions which caused shortness of breath, fatigue, chronic pain, and limited mobility." Compl. (Doc. 31) ¶ 6. Halley tried to return to work in October 2009 on a part-time basis; however, his impairments forced him to stop working altogether on October 30, 2009. Halley has not worked in any capacity whatsoever since October 30, 2009.

Halley received coverage as a participant under a group long-term disability benefits plan underwritten and administered by Aetna for employees of The Duchossois Group, Inc. under the plan name "Long Term Disability Policy" (the "Plan"). The relevant policy number is GP-657484 (the "Policy"). At all relevant times this Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

Halley applied for, received, and exhausted his short-term disability benefits. On December 30, 2009, Halley applied for long-term disability benefits through Aetna. Aetna denied Halley's application on February 10, 2010. Halley successfully appealed that decision and Aetna reversed its denial and awarded Halley long-term disability benefits. Aetna paid Halley long-term disability benefits until November 9, 2010, when Aetna terminated the benefits. Halley appealed again and Aetna resumed payment of the benefits.

Halley received benefits from Aetna until January 23, 2013, when Aetna informed Halley it would terminate his benefits at the end of January 2013. Despite a lack of improvement in Halley's condition, Aetna stated Halley no longer met the Plan definition of disabled.[2] In

---

[2] The Policy defines "total disability" as:

terminating Halley's benefits, Aetna asserted Halley was capable of working at a reasonable occupation other than his own, which disqualified Halley from continued benefits under the Plan.[3] At that time, Aetna had medical evidence in its possession that "established [Halley] could not meet the exertional demands of any identified occupation." Compl. ¶ 10.

On June 24, 2013, Halley appealed the January 2013 denial of benefits. Halley's formal appeal included the submission of additional medical records and medical opinions, and a favorable disability decision from the Social Security Administration ("SSA") with the supporting administrative record. These documents established that Halley is "unable to engage in any substantially gainful activity." Compl. ¶ 11. Halley's "appeal further established that Aetna's termination of benefits was based on a defective vocational evaluation." *Id.*

---

You are deemed to be totally disabled while either of the following applies to you:

- During the period which ends rights after the first 36 months benefits are payable in a period of total disability:

    You are not able, solely because of injury or disease, to perform the material duties of
      your own occupation; except that if you start work at a reasonable occupation you will
      no longer be deemed totally disabled.
- Therefore, during such period of total disability:

    You are not able, solely because of the injury or disease, to work at any reasonable occupation.

You will not be deemed to be performing the material duties of your own occupation or working at a reasonable occupation on any day if:

- you are performing at least one, but not all, of the material duties of your own occupation or you are working at any occupation (full-time or part-time); and
- solely due to disease or injury, your income from either is 80% or less of your adjusted predisability earnings.

Compl. Ex. A at 3.

[3] The Policy defines "reasonable occupation" as: "any gainful activity for which you are, or may reasonably become, fitted by education, training, or experience. It does not include work under an Approved Rehabilitation Program." Compl. Ex. A at 3.

3

Aetna affirmed the denial of benefits on August 22, 2013, stating the medical evidence was insufficient to support a finding of continued disability. Aetna also stated Halley had the functional capacity to engage in a reasonable occupation other than his own, even though Halley submitted opinions from his physicians and the SSA decision finding he was totally disabled from all work. Aetna did not explain why it reached a conclusion different from that of the SSA.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

In Count I of the Complaint, Halley brings a claim under ERISA Section 502(a)(1)(B) for payment of his long-term disability benefits, retroactive to February 1, 2013. Count II of the Complaint reasserts and incorporates the facts of the denial of benefits claim, then pleads that "the foregoing course of conduct continues a breach of fiduciary duty" on the part of Aetna and requests "disgorgement" under Section 502(a)(3). Compl. ¶ 18. Because Halley's fiduciary duty

4

claim seeks the same relief as the denial of benefits claim and Section 502(a)(1)(B) provides the possibility of adequate relief, Count II is dismissed.

Section 502(a)(1)(B) allows an ERISA participant or beneficiary to bring an action "to recover benefits due him [or her] under the terms of his [or her] plan[.]" 29 U.S.C. § 1132 (a)(1)(B). In other words, § 502(a)(1)(B) permits suits for the recovery of unpaid benefits. A breach of fiduciary duty claim based on the "interpretation of plan documents and the payment of claims," running directly to the injured beneficiary, may be brought under § 502(a)(1)(B). *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996).

Section 502(a)(3) allows an ERISA participant, beneficiary, or fiduciary:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). Section 502(a)(3) serves as a "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity*, 516 U.S. at 512. The Supreme Court has explained that, when a court is reviewing an equitable claim under § 502(a)(3), it should consider the appropriateness of that relief, in light of the special nature and purpose of ERISA and Congress's specific inclusion and exclusion of certain remedies in the statute. *Id.* at 515. The Court continued:

> Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'

*Id.* In *Varity*, the Court determined the plaintiffs—former beneficiaries who could no longer

5

pursue a direct claim under § 502(a)(1)(B)—could maintain their suit under the § 502(a)(3) catchall. *Id. Varity* stands for the proposition that if a remedy is available under § 502(a)(1)(B), a court should not find it appropriate to grant additional equitable relief under § 502(a)(3).

The Seventh Circuit has cited with approval the Supreme Court's interpretation of the interplay of these two statutory provisions. *See Mondry v. Am. Family Mut Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009). In that case, the plaintiff styled one of her claims as a § 502(a)(3) claim even though she actually sought repayment of unpaid benefits.[4] *Id.* at 804–05. The Seventh Circuit stated that although the claim was brought under the equitable catchall, it was actually a request for monetary relief more appropriate for § 502(a)(1)(B), and explained: "[c]onsistent with *Varity*'s admonition, a majority of the circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)." *Id.* at 805. The Seventh Circuit saw "no reason to depart from the holdings of those circuits." *Id.*

The *Mondry* court did allow the plaintiff to go forward with a different claim under § 502(a)(3) for interest on the past due benefit amounts—what the court called the "lost time value of the money" the plaintiff had to pay herself. *Id.* at 805–06. But in allowing this claim, the court specifically noted that the plaintiff could not have sought that form of relief under § 502(a)(1)(B) because the plan did not allow for interest on past-due benefits. *Id.* at 806. In alignment with *Varity*, the *Mondry* court allowed the plaintiff to pursue a § 502(a)(3) claim when she was not able to bring a § 502(a)(1)(B) claim. *Id.* at 805–806. The Seventh Circuit did not allow the *Mondry* plaintiff to bring a § 502(a)(1)(B) claim for the denial of benefits as a § 502(a)(3) claim or a claim under both sections for the same injury. Many district courts in this

---

[4] The *Mondry* plaintiff did not bring a separate § 502(a)(1)(B) claim. *Id.*

Circuit have followed suit. *See Roque v. Roofers' Unions Welfare Trust Fund*, No. 12 C 3788, 2013 WL 2242455, at *6 (N.D. Ill. May 21, 2013) ("Indeed, other courts in this district have almost uniformly held that § 502(a)(3) claims must be dismissed if relief may be obtained under § 502(a)(1)(B)." (collecting cases)); *Sexton v. Standard Ins. Co.*, No. 13 C 7761, 2014 WL 1745420, at *1–2 (Apr. 30, 2014).

Halley's Response describes his Count II fiduciary duty claim as: seeking "equitable restitution, not compensatory or punitive damages" (Resp. (Doc. 6) at 1) and "equitable redress for Aetna's undue delay in the payment of benefits" (*Id.* at 2); and for "abusive claims practices . . . [with] the resulting injury" of "the wrongful deprivation of the use of his or her benefits" (*Id.* at 5). But this characterization does not change the nature of the claim, which is plainly pleaded as Aetna's alleged breach of fiduciary duty in denying the benefits sought in Count I. *See, e.g.,* Compl. ¶ 18 ("In addition to the claim for benefits set forth above, the forgoing course of conduct constitutes a breach of fiduciary duty. . . ."). Halley's § 502(a)(1)(B) denial of benefits claim sufficiently covers this alleged injury and the Court will not allow Halley to proceed on the additional, equitably styled claim. *See Varity*, 516 U.S. at 515, *Mondry*, 557 F.3d at 804–05.

In amending his Complaint, Halley relied on a recent Sixth Circuit decision that upheld a district court decision awarding both benefits under § 502(a)(1)(B) and disgorgement under § 502(a)(3). *See Rochow v. Life Ins. Co. of N. Am.*, 737 F.3d 415, 427 (6th Cir. 2013), *reh'g en banc granted, opinion vacated* (Feb. 19, 2014). The Sixth Circuit has recently vacated that opinion and heard *en banc* arguments. The possibility that the *Rochow* decision may be re-instated does not alter the Supreme Court and Seventh Circuit's current view of duplicative § 502(a)(3) claims or this Court's mandate to follow its own Circuit's precedent.

In hopes of salvaging this count, Halley, citing *Mondry*, argues that the Seventh Circuit has held that restitution for the "time value of money" is a separate and distinct injury from the denial of benefits under § 502(a)(1)(B), therefore he should be allowed to pursue both claims. As discussed above, *Mondry* allowed a § 502(a)(3) claim for interest on past-due benefits to go forward because the plaintiff could not bring a direct benefits claim under § 502(a)(1)(B) per the terms of the plan. Indeed, the *Mondry* plaintiff did not even pled a § 502(a)(1)(B) count. Halley's Complaint seeks long-term disability benefits, plus prejudgment interest, based on Aetna's denial of benefits. Compl. at Relief Sought, A & B. Halley also seeks "disgorgement," Compl. at Relief Sought, E, which is not defined but, if sought under the "time value of money" theory expressed in the Response, must be the unpaid benefits and/or interest on those benefits. Halley does not argue that this disgorgement is different from standard prejudgment interest, nor does he claim he is somehow prohibited from requesting interest under the terms of the plan as in *Mondry* and therefore must bring this claim under § 502(a)(3). *See* 557 F.3d at 805–06; *see also Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999) (allowing § 502(a)(3) claim for unpaid interest because § 502(a)(1)(B) claim unavailable).

Halley attempts to muddy the waters by arguing the fiduciary duty claim seeks restitution and that is somehow different from the benefits plus prejudgment interest sought in Count I. As the Seventh Circuit has explained, restitution is a concept, a type of remedy that may or may not be "equitable," depending on the nature of the harm and the claim. *See Clair*, 190 F.3d at 498. (explaining that restitution is, "a legal remedy when sought in a case at law (for example, a suit for breach of contract) and an equitable remedy when sought in an equity case"). Halley characterizes his request under § 502(a)(3) as a claim for "the deprivation of the use of one's benefits" Resp. (Doc. 6) at 5—i.e., Halley seeks the benefits plus interest. Calling this a request

8

for restitution or disgorgement does not change the nature of the relief sought. *See Mondry*, 557 F.3d at 804–05 ("It is a demand for money to which [plaintiff] believes the terms of the Plan entitle her. As such it is relief that [plaintiff] could have sought under section 1332(a)(1)(B), which expressly authorizes a suit by a plan participant to recover benefits due to him under the terms of the plan." (quotation marks omitted)). Halley does not plead a distinct, equitable claim sustainable under § 502(a)(3).

Because the Court has determined Halley cannot sustain Count II as a matter of law, it need not consider Aetna's other arguments for dismissal of this count.

## CONCLUSION

For the foregoing reasons, Aetna's motion to dismiss [62] is granted. Count II is dismissed with prejudice.

Dated: September 10, 2014

_____
SARA L. ELLIS
United States District Judge